IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| GUITAR HOLDING COMPANY, LP, | § | |
| | § | |
|   Plaintiff, | § | |
| | § | |
| v. | § | EP-10-CV-214-KC |
| | § | |
| EL PASO NATURAL GAS COMPANY, | § | |
| | § | |
|   Defendant. | § | |

## ORDER

On this day, the Court considered Defendant's motion to stay and compel arbitration ("Defendant's Motion"), ECF No. 55, and Plaintiff's motion to supplement the record ("Plaintiff's Motion"), ECF No. 94. For the reasons set forth below, both Defendant's Motion and Plaintiff's Motion are **GRANTED**.

### I.   BACKGROUND

The Court first considers Plaintiff's Motion. Upon due consideration, the Court finds that it is well-taken and hereby **GRANTS** the Motion.

The following facts are taken from Plaintiff's original Complaint and Defendant's Motion and are undisputed unless otherwise noted. On March 7, 1929, Plaintiff granted Defendant an easement ("First Easement") for the purpose of running pipelines beneath the surface of the ranch owned by the Guitar family. Notice of Removal Ex. A ("Plaintiff's Original Petition") ¶ 8, ECF No. 1. Defendant laid and operated two pipelines, numbers 1000 and 1001, on this easement. *Id.* ¶ 9. On October 10, 1946, Defendant was contractually granted another right of way ("Second

Easement") "to construct, maintain and operate a pipe line and all necessary appurtenances thereto." Def.'s Mot. 1. Defendant laid and maintained pipelines numbers 1100 and 1103 on this Second Easement. *Id.* at 2. The contract granting the Second Easement to Defendant contained a clause subjecting to arbitration "any dispute [that] arises relative to the amount of damages suffered . . . from laying, maintaining, operating or removing any of the pipe lines of the Grantee." Def.'s Mot. Ex. 1, Ex. A ("Second Contract"), at 1.

On March 23, 1954, Defendant was granted a third right of way ("Third Easement") "to construct, maintain and operate a pipe line with appurtenances thereto." Def.'s Mot. 2. Defendant laid and maintained pipeline number 2057 on this Third Easement. *Id.* The contract granting the Third Easement to Defendant contained a clause subjecting to arbitration "any dispute [that] arises relative to the amount of damages suffered, which are caused by the exercise of rights granted." Def.'s Mot. Ex. 1, Ex. B ("Third Contract"), at 2.

After operating pipelines 1000 and 1001 underneath the First Easement for seventy-six years, Defendant abandoned these pipelines and the Federal Energy Regulatory Commission entered an order approving the abandonment. Pl.'s Original Pet. ¶ 9. On or about October and November 2009, Phil Guitar requested that Defendant release pipelines 1000 and 1001 to Plaintiff so that they could be removed from the ranch by a pipeline reclamation company. *Id.* Accordingly, Defendant sent to Plaintiff a proposed release agreement. *Id.*

Upon receiving the proposed release agreement, Phil Guitar became concerned with paragraphs 3 and 4 regarding the presence of unspecified hazardous materials on or under the easement concerning pipelines 1000 and 1001. *Id.* ¶ 10. Phil Guitar asked a pipeline reclamation company to inspect the First Easement to determine if removal of pipelines 1000 and

1001 could be safely accomplished. *Id.* ¶ 11. The pipeline reclamation company's consultant found numerous scattered pieces of pipeline coating on the surface of the right of way corresponding to the First Easement. *Id.* Upon further investigation and after digging beneath the surface in several locations, the consultant found additional pipeline coating particles. *Id.* ¶ 12. The consultant suspected that the coatings contained asbestos, so he collected and sent samples to a laboratory for testing. *Id.* The results of the test were that the particles of coating contained significant amounts of hazardous asbestos. *Id.*

On April 16, 2010, Plaintiff filed suit in the 394th Judicial District of Hudspeth County, Texas, alleging common law fraud, negligence, gross negligence, and ultrahazardous activity. *Id.* ¶¶ 18-24. On June 9, 2010, Defendant removed the case to this Court, Notice of Removal, and on May 18, 2011, Defendant filed Defendant's Motion seeking to stay the case and compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16. Def.'s Mot. 1-10.

## II. DISCUSSION

### A. Standard

Section 2 of the FAA provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA further provides that any court of the United States shall stay the proceedings before it upon application by one party if it determines that the issue is properly referable to arbitration as per a written contract. *Id.* § 3. A district court adjudicating a motion to compel arbitration must engage in a two-step process. *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 476 (5th Cir. 2003). "'First, the court must determine whether the parties agreed to arbitrate the dispute'" by applying contract law of the

3

state governing the agreement. *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004) (quoting *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002)). This determination involves two considerations: (1) whether there is a valid agreement to arbitrate the claims, and (2) whether the dispute in question falls within the scope of that arbitration agreement. *Janvey v. Alguire*, 628 F.3d 164, 182 (5th Cir. 2010).

Second, if a court finds that the parties agreed to arbitrate the dispute, then the court decides "whether 'any federal statute or policy renders the claims nonarbitrable.'" *Id.* (quoting *Sherer v. Green Tree Servicing*, 548 F.3d 379, 381 (5th Cir. 2008)). "The . . . FAA[] expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Bailey*, 364 F.3d at 263.

### B. Whether the FAA Compels Arbitration

Defendant claims that the FAA compels a stay so as to allow for arbitration of Plaintiff's claims. Def.'s Mot. 3-7. The Court agrees.

First, the Court must determine whether the parties agreed to arbitrate the dispute. *See Bailey*, 364 F.3d at 263. Plaintiff does not dispute that there are two contracts, the Second Contract and the Third Contract, that contain arbitration clauses for disputes arising from the Second Easement and Third Easement. *See* Second Contract 1, Third Contract 2. Nor does Plaintiff dispute that these contracts are valid and enforceable. As such, the Court considers whether the dispute in question falls within the scope of these arbitration agreements. *See Janvey*, 628 F.3d at 182.

The dispute as articulated in Plaintiff's Original Petition involves pipelines 1000 and 1001 under the First Easement. Pl.'s Original Pet. ¶¶ 8-25. On March 29, 2011, Plaintiff moved

4

to compel Defendant to produce records concerning all pipelines crossing the Guitar ranch, not just records pertaining to pipelines 1000 and 1001.  Pl. Guitar Holding Co., L.P.'s Mot. Pursuant to Fed. R. Civ. P. 37 for an Order Compelling Disc. ("Motion to Compel") ¶¶ 2-9, ECF No. 28.  In that motion, Plaintiff stated,

> Certainly, Plaintiff's claims are in no way limited to coating which may have come from the 1000 and 1001 pipelines which have been abandoned by [El Paso Natural Gas].  Indeed, it may be impossible to determine the pipeline from which any particular piece of coating originated and such a distinction is completely irrelevant to the issues presented by the lawsuit.

Mot. to Compel ¶ 5.

Neither party contends that Plaintiff's claims are limited to pipelines 1000 and 1001; in fact, both parties explicitly state otherwise.  *Id.*; Def.'s Mot. 4-6.  Since pipelines other than 1000 and 1001 are implicated, and since those pipelines are governed by contracts containing valid arbitration clauses, the dispute before the Court is within the scope of the two arbitration agreements, namely the Second Contract and Third Contract.  *See* Second Contract 1, Third Contract 2.

Finally, neither party contends that any federal statute or policy renders the claims at issue nonarbitrable.  Hence, the Court finds that the parties contractually agreed to arbitrate the current dispute, and therefore, this case is subject to a stay pending arbitration.  *See* 9 U.S.C. § 3.

**C.     Waiver**

Plaintiff claims that Defendant has waived its right to arbitrate because it has chosen to litigate these claims rather than arbitrate them.  Pl.'s Brief in Opp'n to El Paso Natural Gas Co.'s Mot. to Stay the Case and to Compel Arbitration ("Response") ¶¶ 7-12, ECF No. 83.  Defendant counters that it only became aware that Plaintiff's claims were arbitrable when Plaintiff filed its Motion to Compel on March 29, 2011, and that it filed the instant motion shortly thereafter.

Def.'s Mot. 9.

"'Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party.'" *In re Mirant Corp.*, 613 F.3d 584, 588 (5th Cir. 2010) (quoting *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 577 (5th Cir. 1991)). To invoke the judicial process, a "'party must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration.'" *Id.* at 589 (quoting *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 329 (5th Cir. 1999)). The Fifth Circuit has refused to adopt a bright-line rule in determining when a party has waived its right to arbitration; rather, "'[t]he question of what constitutes a waiver of the right of arbitration depends on the facts of each case.'" *Id.* (quoting *Tenneco Resins, Inc. v. Davy Int'l, AG*, 770 F.2d 416, 420 (5th Cir. 1985)). "'There is a strong presumption against finding a waiver of arbitration, and the party claiming that the right to arbitrate has been waived bears a heavy burden.'" *Id.* at 588 (quoting *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 344 (5th Cir. 2004)).

When the case became arbitrable is relevant to determining whether Defendant substantially invoked the judicial process and demonstrated "a desire to resolve the arbitrable dispute through litigation rather than arbitration." *See In re Mirant Corp.*, 613 F.3d at 589 (quotation omitted); *see also Forte*, 169 F.3d at 329 (noting that unrelated litigation was not arbitrable, and thus, by pursuing non-arbitrable claims through unrelated litigation, the party in issue had not waived its right to arbitrate arbitrable claims); *Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 661 (5th Cir. 1995) (analyzing when party discovered dispute was subject to arbitration in determining whether the party substantially invoked the judicial process and waived

6

its right to arbitrate). This is so because a party cannot evince a preference to litigate rather than arbitrate claims that are arbitrable if it is unaware that those claims are subject to arbitration. *See Williams*, 56 F.3d at 661. The Court therefore considers when this case became arbitrable.

1. **Second Contract and Third Contract**

Plaintiff argues that the arbitration clauses contained in the Second Contract and Third Contract encompass pipelines 1000 and 1001, Resp. ¶¶ 3-5, which, if true, results in a case that was arbitrable from the outset. The Second Contract states,

> It is mutually understood and agreed that in the event any dispute arises relative to the amount of damages suffered arising from the laying, maintaining, operating or removing any of the pipe line of the Grantee, said damage, if not mutually agreed upon, shall be ascertained and determined by three disinterested persons, one to be appointed by the owner of the land, his or their heirs or assigns, one by the Grantee, its successors or assigns, and the third person by the two persons before mentioned, and the decision of the arbitrators thus selected shall be final and conclusive.

Second Contract 1.

The Third Contract contains a similar provision,

> Grantee shall pay all damages which are caused by the exercise of the rights herein granted. It is mutually understood and agreed that in the event any dispute arises relative to the amount of damages suffered, which are caused by the exercise of the rights granted, said damage, if not mutually agreed upon, shall be ascertained and determined by three disinterested persons, one to be appointed by the Grantor, or by the person or persons claiming an interest in the land derived from Grantor, one by the Grantee, and the third person by the two persons before mentioned, and the decision of the arbitrators thus selected shall be final and conclusive.

Third Contract 2.

Plaintiff contends that the phrases "any of the pipe lines" in the Second Contract and "any dispute arises" from the Third Contract subjects to arbitration disputes arising from pipelines 1000 and 1001 from the First Easement. Resp. ¶¶ 3-5. Plaintiff is mistaken. When a contract's

7

terms are unambiguous, or have definite and certain legal meaning, the court must enforce the contract according to its plain meaning. *See Travelers Lloyds Ins. Co. v. Pacific Emp'rs Ins. Co.*, 602 F.3d 677, 681 (5th Cir. 2010). In this case, the Third Contract's arbitration clause limits its applicability to "damages which are caused by the exercise of the rights herein granted." *See* Third Contract 2. The rights granted by the Third Contract are limited to granting Defendant a Third Easement and all associated rights. *See id.* Since pipelines 1000 and 1001 are not located under the Third Easement, damages arising from those pipelines are not damages "caused by the exercise of the rights herein granted." Therefore, by its plain meaning, the Third Contract, governing the Third Easement, does not subject disputes arising from pipelines 1000 and 1001 to arbitration.

The Second Contract similarly excludes from its purview disputes arising from pipelines 1000 and 1001. The Second Contract grants Defendant a Second Easement with the right "to construct, maintain and operate a pipe line and all necessary appurtenances thereto." Second Contract 1. The Second Contract continues, "TO HAVE AND TO HOLD the above described rights and easements, together with any other rights necessary to operate and maintain a pipe line, or pipe lines, over the above described premises unto the said Grantee, its successors and assigns." *Id.* In other words, the Second Contract grants a Second Easement to Defendant with the right to construct and maintain a pipeline. The Second Contract expressly confers upon Defendant the ability to purchase the right to construct additional pipelines on the Second Easement. *Id.* In that clause, all damages "caused by the construction [of the additional pipelines] . . . [shall] be entitled to the same rights for the additional line or lines as is herewith granted." *Id.* Therefore, by its plain terms, the Second Contract subjects to arbitration disputes

8

arising from all pipelines built on the Second Easement, including pipelines built in the future. However, it does not state that pipelines built in the past on the First Easement, such as pipelines 1000 and 1001, are similarly arbitrable or subject to the other terms of the Second Contract.

In sum, the Second Contract governs issues arising from the Second Easement, while the Third Contract governs issues arising from the Third Easement. Pipelines 1000 and 1001 are not located on or under the Second Easement or the Third Easement; therefore, the Second Contract and Third Contract are inapplicable to pipelines 1000 and 1001.

### 2. Right of way for pipelines 1000 and 1001

Plaintiff asserts that the case was arbitrable from the outset and that Defendant therefore has waived its right to arbitration because "the evidence clearly establishes that the 1000/1001 lines run in the same right of way as the 1100/1103 lines." Resp. ¶ 6. The Court disagrees.

As support for the proposition that pipelines 1000 and 1001 are on the same right of way as pipelines 1100 and 1103, Plaintiff cites the depositions of Greg Tencer, corporate representative and employee of Defendant, and Don McLaughlin. *Id.* The portion of Greg Tencer's deposition Plaintiff cites states,

> Q: And other than lines 1000 and 1001, are there other El Paso lines that cross the Guitar Ranch?
> A: Yes.
> Q: Do they cross the ranch in the same right-of-way as 1000 and 1001?
> A: I would have to go back and look at the actual maps. I know they're close, I'm not exactly sure how close.

Resp. Ex. 4, at 8:11-18.

This cited selection shows only uncertainty, and does not "clearly establish[]" that pipelines 1000 and 1001 run on the same right of way as pipelines 1100 and 1103. But Plaintiff submitted additional evidence in which Mr. Tencer clarifies any potential ambiguity on the issue:

9

> Q: Okay. Now, as far as line 1000 and 1001, are they the subject of a separate right-of-way easement?
> A: Yes.
> Q: And as far as line 1100 and 1103, are they the subject of a separate right-of-way easement?
> A: Yes.
> Q: And so there's two right-of-way easements that are involved, as far as the property on the Guitar Ranch is concerned?
> A: Yes.
> Q: And one of those right-of-way easements deals with Lines 1000 and 1001, correct?
> A: Yes.
> Q: And the other one deals with lines 1100 and 1103?
> A: Yes.

Pl.'s Mot. Ex. 3, at 73:6-21.

Don McLaughlin's deposition is equally unavailing. While Don McLaughlin affirmatively states that pipelines 1000 and 1001 run on the same right of way as pipeline 1100 and 1103, Resp. Ex. 6, at 90:23-91:4, he does not state which right of way the pipelines are all supposedly located under. If all the pipelines are located under the First Easement, then disputes arising from any of those pipelines would not be arbitrable. If they are located under the Second Easement or Third Easement, then as per the Second Contract and Third Contract, disputes arising from any of those pipelines would be arbitrable.

As Defendant correctly states, however, Mr. McLaughlin has no personal knowledge regarding pipelines 1100 and 1103 because he has not seen any records relating to those pipelines. *Id.* at 90:23-91:6. Furthermore, the evidence submitted to this Court by both parties suggests that pipelines 1000 and 1001 were constructed under the First Easement and pipelines 1100 and 1103 were constructed under the Second Easement. Indeed, pipelines 1000 and 1001 were laid before Defendant was granted a Second Easement and rights to lay pipelines 1100 and 1103 under that easement. *See* Pl.'s Original Pet. ¶¶ 8-9. Plaintiff's Original Petition in fact

10

states that pipelines 1000 and 1001 were constructed and maintained underneath the First Easement. *Id.* ¶ 9 (discussing the First Easement in paragraph 8, then stating in paragraph 9, "[a]fter operating natural gas pipelines, numbers 1000 and 1001, for approximately 76 years pursuant to *this easement*") (emphasis added).

Plaintiff has not shown that pipelines 1000 and 1001 are in fact located under the same right of way as pipelines 1100 and 1103, and that, if they are, that they are located under the Second Easement or Third Easement, thereby subjecting disputes arising from those pipelines to arbitration. As such, the Court finds the case was never arbitrable based on pipelines 1000, 1001, 1100, and 1103's location under the same easement or right of way and that the case was not arbitrable from the outset.

3. **Removal**

Despite Plaintiff's assertions to the contrary, this case was not arbitrable based solely on Plaintiff's Original Petition when Defendant removed the case to this Court. Plaintiff's Original Petition limits the relief sought to damages arising from pipelines 1000 and 1001. *See* Pl.'s Original Pet. ¶¶ 8-27. In the petition, Plaintiff explicitly mentions the First Easement granted in 1929 and pipelines 1000 and 1001 which were built under that easement. Pl.'s Original Pet. ¶¶ 8-9. Throughout the rest of the Petition, Plaintiff refers to actions taken concerning only the First Easement and pipelines 1000 and 1001, and refers to the "easement," "right-of-way," and "pipeline." *Id.* ¶¶ 8-27. As discussed above, disputes arising out of pipelines 1000 and 1001 alone are not arbitrable, and at the time of removal, Defendant had no reason to believe the case involved pipelines other than 1000 and 1001. Therefore, the act of removal cannot be considered as substantially invoking the judicial process for purposes of waiver. *See Williams*, 56 F.3d at

661 (when party discovered dispute was subject to arbitration is relevant to determining whether the party substantially invoked the judicial process and waived the right to arbitrate).

### 4. When the case ultimately became arbitrable

Having found that Defendant did not substantially invoke the judicial process through most of this litigation because the case was not arbitrable, the Court now considers when the case became arbitrable[1] and what actions Defendant subsequently took so as to determine whether Defendant has waived its right to arbitration. *See Williams*, 56 F.3d at 661.

On its face, Plaintiff's Original Petition is limited to damages arising from pipelines 1000 and 1001, and, as discussed above, damages arising from those pipelines are not arbitrable. Therefore, the case only became arbitrable once the claims involved pipelines other than 1000 and 1001. Plaintiff for the first time indicated on the record that its claims exceeded the scope of pipelines 1000 and 1001 on March 29, 2011, when, in its Motion to Compel, Plaintiff stated,

> Certainly, Plaintiff's claims are in no way limited to coating which may have come from the 1000 and 1001 pipelines which have been abandoned by EPNG. Indeed, it may be impossible to determine the pipeline from which any particular piece of coating originated and such a distinction is completely irrelevant to the issues presented by the lawsuit.

Mot. to Compel ¶ 5.

This was the first unequivocal assertion by Plaintiff that its claims extended to other pipelines, thus potentially creating arbitrable issues for resolution. On April 20, 2011, Magistrate Judge Garney granted in part Plaintiff's Motion to Compel, ordering Defendant to "produce all discoverable documents requested by Plaintiff concerning all pipelines, including but not limited

---

[1] The Court found above that the case is arbitrable because the parties agreed to arbitrate disputes in issue, and such disputes in issue are within the scope of the parties' arbitration agreements.

to pipelines numbered 1100, 1103, and 2057, crossing the Guitar Ranch." Order ¶ 1, ECF No. 43. The dispositive motion deadline was March 31, 2011, Order, ECF No. 20, just two days after Plaintiff indicated in its Motion to Compel that its claims were not limited to pipelines 1000 and 1001. Defendant filed the instant motion seeking to stay the case and compel arbitration on May 18, 2011. Def.'s Mot.

Defendant filed a series of dispositive motions on the last day permissible, only two days after Plaintiff filed its Motion to Compel. *See* ECF Nos. 29-30, 37. However, filing those motions merely two days after this case became arbitrable does not necessarily reveal an intent or preference to resolve arbitrable issues through litigation rather than arbitration. Instead, filing such dispositive motions within the deadline may arise from Defendant's desire to preserve its ability to seek summary judgment should the court later deny a motion to compel arbitration. The alternative, electing not to file dispositive motions and instead later filing a motion to compel arbitration, risks waiving the right to seek summary judgment should the court deny the motion to compel arbitration. Assumption of such a risk is not necessary to avoid waiving one's right to arbitrate. *See Keytrade USA, Inc. v. Ain Temouchent M/V*, 404 F.3d 891, 897-98 (5th Cir. 2005) (finding no waiver where a defendant concurrently filed a motion to compel arbitration with a motion for summary judgment); *Steel Warehouse Co. v. Abalone Shipping Ltd. of Nicosai*, 141 F.3d 234, 236-38 (5th Cir. 1998) (finding no waiver where defendant filed motion to dismiss contemporaneously with a motion to compel arbitration).

Furthermore, Defendant filed its Motion seven weeks after Plaintiff explicitly indicated that its claims were not limited to pipelines 1000 and 1001 and four weeks after the Magistrate Judge ordered Defendant to produce records related to pipelines other than 1000 and 1001, well

13

within the period within which one may file a motion to compel arbitration to avoid waiver. *See Tenneco Resins*, 770 F.2d at 420-21 (finding no waiver where the defendant participated in eight months of discovery before filing a motion to compel arbitration); *see also Williams*, 56 F.3d at 661 (finding no waiver where party removed the case to federal court, filed a motion to dismiss, a motion to stay proceedings, and an answer, asserted a counter claim, and exchanged Rule 26 discovery before discovering the case was arbitrable and filing a motion to compel arbitration); *Gen. Guar. Ins. Co. v. New Orleans Gen. Agency Inc.*, 427 F.2d 924, 929-30 (5th Cir. 1970) (finding no waiver where moving party filed answer denying liability and counterclaims, attempted to implead parties, and allowed taking of two depositions before demanding arbitration); *cf. In re Mirant Corp.*, 613 F.3d at 589-92 (finding waiver where the defendant waited eighteen months before moving to compel arbitration while attempting to obtain dismissal on the merits).

Plaintiff has not met its "heavy burden" of proving waiver. *See In re Mirant Corp.*, 613 F.3d at 588. The Court holds that Defendant did not waive its right to arbitration by filing its dispositive motions two days after the case potentially became arbitrable. Furthermore, by filing Defendant's Motion shortly thereafter without intervening motions exhibiting a preference for litigation rather than arbitration of arbitrable issues, Defendant preserved and properly invoked its right to arbitrate.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion, ECF No. 94, and Defendant's Motion, ECF No. 55, are **GRANTED**. The parties shall proceed with arbitration.

14

**IT IS FURTHER ORDERED** that the case is **STAYED** pursuant to 9 U.S.C. § 3.

The Court administratively **CLOSES** the case; however, any party may seek leave to re-open it, if necessary, upon completion of arbitration.

**SO ORDERED**.

**SIGNED** on this 17th day of June, 2011.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE